JANE GEORGE, APPELLANT, *v.* W. L. BUTLER ET
AL., RESPONDENTS.

NOTICE TO AGENT—WHEN IMPUTED TO PRINCIPAL—SUBROGATION.

1. Defendant Butler held real estate for a term of years under a
written lease, and assigned and delivered it to the Pacific In-
vestment Company to secure a debt of $2,500. He afterwards
executed a mortgage on the same premises to secure $1,000,
due plaintiff, which was recorded, in which the property was
erroneously described as "lot 5," instead of "lot 6." After-
wards he made a trust deed to secure an additional loan of
$1,000 from the investment company and the first loan of
$2,500, which was accepted by that company without actual
knowledge of plaintiff's mortgage. Later he made a mortgage
to Sutherland to secure $3,500 borrowed of him to pay the
amount due on the trust deed, which Sutherland paid out of
his loan without any knowledge of plaintiff's mortgage (and it
was not mentioned in the abstract upon which he relied). The
plaintiff's husband made her loan as agent, and he had notice
the property was held as security for the $2,500, the first loan,
a short time before he made it, and the circumstances in evi-
dence authorized the inference that it was in his mind when
he acted. *Held,* the notice to plaintiff's agent, before the
transaction, was properly imputed to her; that the delivery of
the assigned lease to the investment company created the first
lien on the property; and that the subrogation of Sutherland
to the lien of the company was not error.

2. A person, without any previous interest, who pays a mortgage
debt at the instance of the mortgagor, and takes a mortgage
on the same property, believing that he is getting security
equal to that held by the person whose debt he pays, may,
when no innocent person can be injured, be subrogated to his
rights.

(No. 838. Decided Nov. 13, 1897.)

Appeal from the Third district court, Salt Lake county. M. L. Ritchie, *Judge.*

Action by Jane George against William L. Butler, Jabez G. Sutherland, and others to foreclose a mortgage, in which defendant Sutherland filed a cross complaint. From a decree in favor of Sutherland, plaintiff appeals. *Affirmed.*

*J. E. Darmer* and *C. F. & F. C. Loofbourow,* for appellant:

No right of subrogation existed: Harris on Subrogation, sec. 975, note " A;" Harris on Subrogation, secs. 797-798-799, note " C;" Harris on Subrogation, 807 and 809, note " B;" Sheldon on Subrogation, secs. 1, 2 and 3; Sheldon on Subrogation, secs. 186, 240-1 and 2; Vol. 24 A. & E. Ency. of Law, pages 281-2 and 3, and note 1 and note 1 on pages 286, 287 and 288; *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534; *Watson* v. *Wilcox,* 39 Wis. 643; *McNeil* v. *Miller et al.,* 29 W. Va. 480; *Kitchell* v. *Mudgett et al.,* 37 Mich. 81; *Desot* v. *Ross,* 95 Mich. 81; *Mather* v. *Genswold,* 72 Iowa 550; *Wormer & Sons* v. *The Agr. Works et al* , 62 Iowa 699; *Small* v. *Stagg,* 95 Ill. 39; *Beaver* v. *Slanker,* 94 Ill. 175; *Nash et al.* v. *Taylor,* 83 Ind. 347; *Binford* v. *Adams,* 104 Ind. 41; *The Gardenvill Permanent L. Asso.* v. *Walker,* 52 Md. 452; *Bunn* v. *Lindsay,* 95 Mo. 251; *Acer* v. *Hotchkiss,* 97 N. Y. 396; *Webster and Goldsmith's Appeal,* 86 Pa. St. 409; *Miller's Appeal,* 119 Pa. St. 620; *Clark* v. *Moore,* 76 Va. 262; *Cohn* v. *Hoffman,* 50 Ark. 108; *Winkle* v *Williams,* 38 N. J. Eq. 105; *Morris* v. *White,* 36 N. J Eq. 324; *Moran* v. *Abbey,* 63 Cal. 56.

*Williams, Van Cott & Sutherland* and *J. M. Thomas,* for respondents:

The weight of modern authority is in favor of subroga-

tion in cases of this character: *Johnson* v. *Tootle,* 14 Utah 482; *Carr* v. *Caldwell,* 10 Cal. 380; *Swift* v. *Cramer,* 13 Cal. 526; *Trust Company* v. *Peters et al.,* 30 L. R. A. 829; 3 Pomeroy's Equity, sec. 1212; *Backer* v. *Pine,* 130 Ind 293; *Johnson* v. *Barrett,* 117 Ind. 551; *Sidener* v. *Pavey,* 77 Ind. 241; *Shafer* v. *McClosky,* 101 Cal. 576; *Company* v. *Ellsbree* (Kan ), 40 Pac. Rep. 906; *Yaple* v. *Stevens* (Kan.), 14 Pac. Rep. 222; 1 Watts and S. 420, 425; *Metzen* v. *Shafer,* 56 Cal. 81; *Whiteselle* v. *Loan Agency,* 39 S. W. Rep. 194.

ZANE, C. J.:

It appears that the defendant William L. Butler, on November 1, 1890, held a written lease of the land described in plaintiff's complaint for the term of 25 years, to end November 1, 1915, duly recorded; that on the same day he borrowed of the Pacific Investment Company $2,500, and to secure its payment he gave the company his promissory note, also signed by Henry George as surety, for the amount, and assigned and delivered the lease; that on January 29, 1891, he borrowed $1,000 of the plaintiff, to whom he and his wife, Jane R. Butler, executed their promissory note for that amount, and to secure it gave a mortgage on the premises described in the lease, which was also duly recorded. (In this mortgage, by mistake, lot 5, in block 57, instead of lot 6, was mentioned.) It also appears that the investment company, on February 1, 1893, made a further loan of $1,000 to the defendant William L. Butler, and took his promissory note for that amount, and to secure it and the note for $2,500, bearing date November 1, 1891, took a trust deed on the same premises, executed and acknowledged by himself and his wife, Jane. At the time of this loan the officers' or agents of the investment company did not have actual notice of plaintiff's mortgage. It also appears

that defendant Jabez G. Sutherland, on March 22, 1895, loaned defendant William L. Butler $3,500 for the express purpose of paying the indebtedness of the latter to the investment company, and took a mortgage on the same premises to secure it; that Sutherland actually paid the two notes and the trust deed to the investment company out of the money he so loaned, and the notes were indorsed " Paid " by the company, and delivered to Sutherland, with all the other papers in the hands of the company relating to the land; that Sutherland had no actual knowledge of the mortgage to plaintiff when he made his loan, and the abstract of title upon which he made it did not contain any reference to it. It also appears that William L. George, the husband of the plaintiff, was her general agent to transact her business, and as such he negotiated her loan to Butler. While the evidence does not prove the plaintiff knew, at the time she made the loan, the lot was held as security for the $2,500 to the investment company, the preponderance does establish that her husband and agent did know of it shortly before he negotiated the loan; and in view of that fact, and the other circumstances in evidence, we must infer that he had not forgotten it when he made the transaction for his wife as her agent. It is probable the plaintiff's mortgage was not mentioned in the abstract delivered to Sutherland, because of the mistake in the description of the lot. The court below, by its decree, subrogated the defendant and cross complainant Sutherland to all the rights the Pacific Investment Company had to a first lien on the mortgaged premises, and directed that he should be first paid to the extent of the $2,500, and the interest due thereon. From the decree the plaintiff has appealed, and insists that, in so far as it prefers the $2,-500 to the amount due her, it is erroneous.

Having determined that the plaintiff's agent knew of the prior lien of the investment company on the lot when he negotiated her loan and accepted the mortgage, from information obtained before the transaction, the question arises, should such notice to the agent be held notice to the plaintiff? The general rule recognized by all the authorities is that notice to an agent when making or negotiating a transaction within the scope of his authority is notice to the principal. The knowledge must be in the mind of the agent at the time of the transaction or negotiation. Notice received by the agent before, but forgotten, will not be imputed to the principal. There is a conflict in the authorities as to whether information received by the agent before the transaction, though present in his mind when it was made, can affect the rights of the principal. One line of authorities holds that such notice must be received by the agent during the negotiation of the sale, loan, or other transaction; while the other line holds that it may be received before, if, on account of its nearness, or other circumstances, it clearly appears to have been present in the mind of the agent at the time he acted. The first rule is based upon the theory of the legal identity of the agent, when acting within the scope of his authority, with the principal, upon the idea that such acts are, in legal effect, the acts of the principal; that the knowledge reaching the agent at such time in effect reaches the principal, and that such as reaches the agent before such identity in law does not reach him, and cannot affect his rights. The above rule of law, that notice to the agent before entering upon the particular business authorized, if present to his mind during its transaction, will be imputed to the principal, is based upon the presumption that the agent will obey the rule of law requiring him to communicate

to his principal any knowledge in his possession material to the transaction, that he will not withhold from his principal any material information respecting the subject-matter of the transaction, and that he will in good faith discharge his duty as agent. In order that notice to the agent before the negotiations with respect to the transactions may be imputed to the principal, the evidence must afford satisfactory proof the agent had not forgotten such knowledge at the time of the transaction. Nor will such communication to the principal be presumed if it appears the agent received it in confidence as attorney for a third party, nor if the evidence affords any reasonable inference that he had any other motive, which influenced him not to communicate it. While there is a great conflict in the authorities with respect to the rule, we are disposed to adopt the one as above qualified, based on the duty of the agent to communicate to his principal any knowledge possessed by him relating to the subject-matter of the agency. This rule is laid down by the late English decisions, by the supreme court of the United States, and by many of the state courts. The Distilled Spirits, 11 Wall. 356; Mechem, Ag. § 721; *Brothers* v. *Bank*, 84 Wis. 381; *Constant* v. *University of Rochester*, 111 N. Y. 604; *Chouteau* v. *Allen*, 70 Mo. 290

The plaintiff further insists that the court erred in subrogating the cross complainant Sutherland to the lien of the Pacific Investment Company, and decreeing that his debt to the amount of $2,500 should be first paid out of the proceeds of the sale. The assignment and delivery of the lease by Butler, on November 1, 1890, to the Pacific Investment Company, as a pledge to secure the $2,500 borrowed of the company on that day, created a lien upon the property described in favor of the company, and by including that note in the trust deed of February 1, 1893,

without actual notice of the mortgage of January 29, 1891, to secure the $1,000 loaned by the plaintiff, did not abrogate the lien created by the pledge, for the reason that the company did not know of the mortgage to the plaintiff, and its agents understood they were acquiring the first lien by the trust deed; and the plaintiff was not prejudiced by including the $2,500 in the trust deed. The company retained possession of the note, the lease, and the assignment, and it was to its interest to retain the lien created by the pledge.

With respect to the transaction in which Sutherland loaned Butler $3,500 to pay off the liens upon the property, it appears that Sutherland paid out of that sum the $2,500 note which the decree prefers, as well as other liens upon the property; that he had no actual knowledge of plaintiff's mortgage, and understood that he was getting the first lien by the mortgage he took to secure his loan. No reference to plaintiff's mortgage was made in the abstract, upon which Sutherland relied when making his loan. He believed he was getting the first lien. The payment of $2,500 by Sutherland, and his substitution as lienholder in the place of the company, could not prejudice the rights of the plaintiff. In this case Sutherland loaned his money to the owner of the leasehold estate, for the purpose of paying off the lien held by the investment company, believing and expecting that he would get the same security that the company had whose liens he paid, but afterwards learned of the $1,000 mortgage held by the plaintiff. An application of the equitable doctrine of subrogation to the transaction gives to the cross complainant the security he was led to believe he was getting, and the same that was held by the creditor whose debt he paid, and the plaintiff is left the same security he had before. Sutherland is substituted for the investment

company as creditor and lienholder. No change is made in the rank or relative priority of the securities. The transaction consisted of mere immaterial changes as to its effect upon the plaintiff's equities. Equity applies the doctrine of subrogation to a great variety of situations and emergencies arising in human affairs. Its end is substantial justice, and we think it applicable to the facts of this case.

Tested alone by the earlier cases, Sutherland might be regarded as a volunteer, but latterly the doctrine of subrogation has been developed and expanded, and given a wider application to business matters. By analogy, it has been applied to transactions similar to the one under consideration,—to one having no previous interest to protect, who pays off a mortgage, or advances money for its payment, at the instance of the mortgagor, and for his benefit, when no innocent person can be injured, believing he is getting security equal to that of the person whose debt he pays. We cannot hold Sutherland to be a mere volunteer or stranger, officiously intermeddling by paying the debts due the Pacific Investment Company. *Emmert* v. *Thompson*, 49 Minn 386; 3 Pom. Eq. Jur. § 1212; *Cobb* v. *Dyer*, 69 Me. 494; *Bruse* v. *Nelson*, 35 Iowa 157; *Whiteselle* v. *Loan Agency* (Tex. Civ. App ), 27 S. W. 309; Harris, Subr. § 811.

Our conclusion is that the decree of the court below subrogating the cross complainant to the lien of the Pacific Investment Company by virtue of the assignment and delivery of the lease as a pledge to secure the $2,500 loaned on November 1, 1890, and directing it to be paid before the debt to plaintiff, was not erroneous. The decree of the court below is affirmed.

BARTCH and MINER, JJ., concur.