## BADGER COAL & LUMBER CO. v. OLSEN et al.
### (JACOB, Intervener.)

No. 3048.   Decided September 10, 1917.   (167 Pac. 680.)

1. MECHANICS' LIENS—ENFORCEMENT OF LIEN—PARTIES. Under Mechanics' Lien Law (Comp. Laws 1907, sections 1372-1400), any person who claims a mortgage or other lien on premises on which mechanics' liens are sought to be foreclosed in an action in equity may be made a party and his right to claim a lien may be litigated.[1] (Pafe 311.)

2. MORTGAGES—MECHANICS' LIENS—PRIORITY. Where the purchaser of lots gave a blanket mortgage limiting the amount on any one lot to $350, and began erection of a dwelling house on one lot for which petitioners furnished materials, and the mortgagee released the lot from the blanket mortgage and took two new mortgages in a sum approximating the value of the house and the lot, such transaction was not a renewal of the old mortgage, but was done for the purpose of securing increased security on the old debt, and therefore mechanics' liens acquired prior to the taking of the second mortgage were superior to such mortgage. (Page 313.)

3. MECHANICS' LIENS—FORECLOSURE—SURPLUS—MORTGAGES. After the satisfaction of the mechanics' liens the mortgagee was entitled to any surplus, and it was error to decree that he had no right or interest in the land. (Page 315.)

Appeal from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by the Badger Coal & Lumber Company against N. C. Olsen and wife and another, wherein Emil H. Jacob intervened.

From the degree rendered, defendant T. P. Terry appeals.

REMANDED, with directions to modify.

*George Halverson* for appellant.

*C. R. Hollingsworth* for respondent.

---

[1] *Cain* v. *Parfitt,* 48 Utah, 81, 158 Pac. 448.

FRICK, C. J.

The Badger Coal & Lumber Company, hereinafter called company, commenced this action against the defendants N. C. Olsen and Marie Olsen to forclose a mechanic's lien on premises owned by said defendants. T. P. Terry, hereinafter called appellant, was made a party to the action upon the alleged ground that he claimed ''some estate or interest'' in the premises on which the company claimed the mechanic's lien, but it was further alleged that the said claim was ''without any right whatever.'' The Olsens did not appear in the action. In order to bring in all other mechanics' lien claimants the appellant duly published the notice required by Comp. Laws 1907, section 1391. Pursuant to such notice, one Emil H. Jacob appeared in the action and filed an answer and cross-complaint, in which he set up a mechanic's lien against the Olsens and the property in question.

The appellant demurred to plaintiff's complaint. The demurrer was overruled, whereupon he filed an answer, in which he set up two notes, one for $675, dated December 15, 1914, and one for $500, dated February 6, 1915, which notes were secured by two mortgages on the premises on which the mechanics' liens aforesaid were claimed, and which mortgages are dated the same as said notes; and he prayed judgment for the amount of the two notes, that his mortgages be declared superior to the mechanics' liens, that the same be foreclosed and the premises sold, that the proceeds of such sale be first applied to the payment of said notes and mortgages, and for general relief.

The facts found by the court, briefly stated, are that the appellant, on August 24, 1914, was the owner of a certain parcel of real estate in Ogden City, Weber County, Utah, which real estate is fully described; that on said day he sold, and by proper deed conveyed, said real estate to the defendant N. C. Olsen, who, with his wife, Marie Olsen, on the date last aforesaid, executed and delivered six certain promissory notes to the appellant, five of which were for $1,000 each, and the sixth was for $1,200, aggregating the sum of $6,200, which was the consideration or purchase price Olsen agreed to pay for said real estate; that on said date, to secure

the payment of said six notes, said Olsens duly executed and delivered a mortgage to the appellant in which they mortgaged all of said real estate for the purpose aforesaid; that said mortgage contained the following:

"It is hereby mutually agreed by and between the parties herein that the first parties are to subdivide the above-described mortgaged premises into lots; the second party, his heirs or assigns, agrees to make a partial release of this mortgage as to any lot included therein, at the request of the first parties, and upon the payment to the said second party, his heirs or assigns, the following sum of money for the lots designated, as follows: The sum of $200 for each of the west ten lots contained in the above-described tract of land, and the sum of $350 each for all other lots contained in the above-described tract of land. The size of said lots to be as follows: All lots south of Eighth street and fronting thereon to be 42 feet in width; all lots north of Eighth street and fronting thereon to be 44.33 feet in width."

The court further found that, pursuant to the foregoing agreement, Olsen subdivided said real estate into 39 lots, and numbered them from 1 to 39 inclusive; that in the fall of 1914 said Olsen commenced the construction of a dwelling house on lot 10, being one of said 39, which is the particular lot in question here, and on which said mechanics' liens are claimed and on which said two mortgages for $675 and for $500, respectively, were given by said Olsens; that between November 12 and December 31, 1914, said company, under an express agreement with said Olsen, sold and delivered materials which were used in the construction of said dwelling house, amounting to the sum of $352.35; that said company duly complied with the provisions of the mechanics' lien statute of this state, and is entitled to a mechanic's lien on said lot 10, together with the improvements thereon, for said sum of $352.35; together with legal interest, and for $25 as an attorney's fee; that between November 7 and December 29, 1914, said Emil H. Jacob, under an express agreement with said Olsen, performed labor on said dwelling house amounting to the sum of $115; that said Jacob has complied

with all the provisions of the mechanics' lien statute of this
state, and is entitled to a mechanic's lien on said lot 10 and
the improvements thereon for said sum of $115, together with
legal interest, and $25 as an attorney's fee; that on December
15, 1914, the appellant duly released said lot 10 from said
mortgage of $6,200, which release was duly recorded on
December 17, 1914; that on December 15, 1914, said Olsens
executed and delivered to said appellant a note for $675, with
10 per cent. interest, and on the same date executed and
delivered to him a mortgage for $675 on said lot 10 to secure
the payment of said note; that said mortgage was duly
recorded on December 17, 1914; that on February 6, 1915,
said Olsens also executed and delivered to said appellant
a note for $500, with 10 per cent. interest, and on said date
executed and delivered a mortgage for $500 on said lot 10
to secure the payment of said note, which mortgage was duly
recorded February 18, 1915. The court also found that there
"was no consideration whatever passing from said defendant
Terry to the defendant Olsen for the note and mortgage of
$675." A finding in the same words was also made with
regard to the $500 note. The court further found:

"That said promissory note of $675 and said mortgage
securing the same, and said promissory note of $500 and the
said mortgage securing the same, so given by the defendant
N. C. Olsen and his wife to the defendant Terry, were not
renewals, or renewal of part thereof, of the said original
indebtedness of $6,200, referred to herein. Said notes of $500
and $675, or either thereof, or any part thereof, in any way
representative of or continuing the said original indebtedness
of $6,200, owing by the defendant N. C. Olsen and his wife to
the defendant Terry."

The appellant, however, testified, and his testimony is not
disputed, that he had released two of the $200 lots for which
he had received nothing from the Olsens. The appellant,
however, did not claim that the two notes and mortgages for
$675 and for $500, respectively, were given as a consideration
for the release of said lots. Indeed, it is clear from appel-

lant's testimony that the two notes and mortgages aforesaid were given for another purpose entirely.

The findings go into great detail, but the foregoing synopsis covers the substance of the material parts.

The court made conclusions of law in which it found that the mechanics' liens of the company and of Jacob were superior to the two mortgages of the appellant. The court entered a decree accordingly, in which it ordered said lot 10, together with the improvements thereon, sold, and the proceeds applied in payment of said mechanics' liens, with interest and attorneys' fees as before stated. The court, however, expressly decreed:

"It is hereby further ordered, adjudged, and decreed that the defendant T. P. Terry has no estate, right, title, or interest whatever in and to the tract of real property hereinafter described, or any part thereof, and that said defendant is forever enjoined and debarred from asserting any estate, right, title, or interest whatever in and to the said tract of real property or any part thereof, hereinafter described, adverse to the plaintiff and to said lien claimant Emil H. Jacob."

The appeal is from the decree aforesaid. As before stated, the appellant filed a general demurrer to the complaint, and in his first assignment of error he insists that the court erred in overruling said demurrer. In support of the assignment it is argued that the appellant is not a proper party to this action. It may well be doubted whether that objection can be raised by a general demurrer. Waiving that point, however, we have already held that under our statute any person who claims a mortgage or other lien on premises on which mechanics' liens are sougtht to be foreclosed in an action in equity may be made a party, and his right to claim a lien on the premises in question may be litigated in such an action. *Cain* v. *Parfitt*, 48 Utah, 81, 158 Pac. 448. We see no reason to change or modify our ruling in that regard. The complaint was not vulnerable to the demurrer for the reason that appellant's claim to or interest in the property in question was not more specifically stated. Enough was stated in the complaint to authorize the company

to make appellant a party to the action. The court, therefore, did not err in overruling the demurrer.

Proceeding now to a consideration of the merits, we remark that while appellant's counsel assails some of the findings of fact, yet we have discovered nothing in them which is material to this decision which is not supported by ample evidence. The controlling facts are not in dispute, and the appellant must stand or fall on the facts that are not in dispute. In view that the controlling facts are not in dispute, the questions to be determined are questions of law rather than of fact.

Appellant's counsel, however, cites and relies on the doctrine stated by the author in 2 Jones on Mortgages, section 971, where it is said:

"When a new mortgage is substituted in ignorance of an intervening lien, the mortgage, released through mistake, may be restored in equity and given its original priority as a lien. This was done in a case where the holder of a first mortgage, in ignorance of the existence of a subsequent one on the premises, released his mortgage and took a new one. There was no evidence of mistake except such as might be inferred from the mortgagee's ignorance of the existence of the intermediate mortgage, and there was no evidence that he would not have made this arrangement had he known of this fact; but it was considered that although the court was not at liberty to infer facts not proved, yet that it was at liberty to draw all the inferences which logically and naturally follow from the facts proved; that it is not an act of reasonable prudence and caution such as men commonly use in the conduct of business affairs for one having a first mortgage upon property, without consideration or other apparent motive, to release it, and take a new mortgage subject to a prior lien of a considerable amount; and therefore it may be inferred that the mortgagee would not have made the release had he known of the intervening mortgage. A court of equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction."

The foregoing text is supported in the cases of *Shaffer* v. *McClosky*, 101 Cal. 576, 36 Pac. 196, *Young* v. *Shaner*, 73 Iowa, 555, 35 N. W. 629, 5 Am. St. Rep. 701, and *Bruse* v. *Nelson*, 35 Iowa, 157, and numerous other cases, which need not be referred to.

In our judgment, the undisputed facts in this case do not bring it within the foregoing doctrine. It must be remembered that the two notes and mortgages in question were not

substitutes for the original notes and mortgage which were given for $6,200. Nor was the release of lot 10 from the original mortgage made "in ignorance of an intervening lien." When the appellant released lot 10 from the original mortgage, he knew that the Olsens were erecting a dwelling on lot 10 and that they were obtaining both materials and labor therefor. He could easily have ascertained just what the facts were in that regard from both the company and from Jacob, but he did not take the trouble to ask them or either of them. He, however, testified that he took the two notes and mortgages because he thought the dwelling house that was being erected on lot 10 was well worth the aggregate of the two notes, namely, the sum of $1,175. He therefore merely took the two notes and mortgages as an additional security for the $6,200. Appellant was therefore attempting to obtain the benefit of the value of the dwelling house which was being erected on lot 10. No doubt if he had not inserted the clause in the original mortgage which we have set forth he would, as against the company and Jacob, have been entitled to the benefit of the dwelling house in any event, since his mortgage was of record when the materials were furnished, and the labor was performed, to the extent at least that the dwelling house was necessary to satisfy the original mortgage. In view, however, of the clause of the mortgage, which fixed a limit of $350 on lot 10, appellant no doubt desired to cover the full value of the house, namely, the $1,175, by taking the two additional notes and mortgages. Appellant, however, released lot 10 from the original mortgage with full knowledge that some one was furnishing materials and performing labor for and on said dwelling. In releasing lot 10 from the mortgage it was not done, as is usually the case, to substitute a new mortgage for the old one, which is released. But what appellant sought in this case to accomplish was to get $1,175 additional security for the $6,200 mortgage. The release of lot 10 was therefore not made "in ignorance of an intervening lien," nor was it made so as to substitute a new mortgage for the one that was released. It is apparent that this case

does not come within the rule stated in 2 Jones, supra, and in the cases before referred to.

Neither is the appellant seeking to have his original mortgage reinstated. What he is attempting in this action is to obtain the full benefit of the two mortgages which were made and delivered after the company and Jacob had acquired liens on lot 10. It is quite clear that if appellant's original mortgage were reinstated as to lot 10, then all he could claim as against the equities of the company and Jacob would be the $350 on said lot. In view that they, under the law, acquired an interest in lot 10, they, in equity, could have paid the $350 fixed in the mortgage to appellant, and then could have enforced their lien on any surplus remaining over and above that amount. Under the original mortgage that was all the claim appellant had on lot 10 as against the Olsens, and it likewise was all he had as against those claiming equities in lot 10 through or under the Olsens. The Olsens held the equity of redemption, which consisted of any excess over the $350 limit fixed in the mortgage, and certainly the company and Jacob were entitled to the full value of that equity. As before stated, however, appellant released lot 10 entirely from the mortgage with full knowledge of the prevailing conditions respecting the improvements that were being made on said lot, and hence, in our opinion, his rights under the two new mortgages are inferior and subsequent to the rights of the mechanics' lien claimants precisely as the court concluded. We are not now passing on what would have been the result if the appellant had brought an action to have his original mortgage reinstated, or if he, in this action, were seeking to accomplish that result. In order, however, to do that, he cannot insist on the full benefit of his two new mortgages as against the equities of the company and Jacob. While, as against the Olsens, he could claim any additional security the new mortgage gave him, yet, as against the mechanics' lien claimants, he has no rights whatever by virtue of the two new mortgages, except as against any surplus that may remain after the mechanics' liens are satisfied.

While we have no doubt respecting the correctness of the foregoing conclusions, yet we are constrained to say that we have less hesitancy in arriving at these conclusions in this case for the reason that, in any event, appellant's rights will be protected to the same extent as though his first mortgage were in fact reinstated. If that were done, then, as we have seen, as against the equities of the mechanic's lien claimants, he would be limited to $350 as to lot 10. He, however, testified that the dwelling alone is worth $1,175. The two mechanics' liens, with attorney's fees, and without adding interest, amount to only $517.35, or $657.65 less than the conceded value of the dwelling without the lot. The appellant thus has not only the $350, the value fixed on lot 10, but he also has a margin of $657.65 on the house after the two mechanics' liens are satisfied. He thus has an excess of $307.65 over what he would have if his original mortgage were reinstated and he were limited to the $350 interest in lot 10 as provided in said mortgage. Of course, we do not vouch for the correctness of the foregoing figures, except that they are correct in accordance with the evidence. As a matter of course, he would not be limited to $350 except in case all above that amount were necessary to satisfy the two mechanics' liens. After those liens were satisfied, he, as against the Olsens, would be entitled to the surplus if it were necessary to satisfy his $6,200 mortgage. The other two mortgages did not increase appellant's rights, in view that the consideration for all the three mortgages does not exceed said $6,200 and all are based thereon.

Appellant, however, also complains of the restrictive clause in the decree which we have quoted. Counsel for the company and for Jacob, however, contends that the decree is limited to the rights of the lien claimants. The language is, however, sweeping, and it is open to the objection that appellant has no rights whatever in or to lot 10. Of course, all the rights that the two lien claimants can assert against said lot as against appellant is to have their liens satisfied. When the mechanics' liens are satisfied, appellant is entitled to any surplus that may remain. If the

decree is to be construed otherwise, it is clearly erroneous. In view that, in any event, this case has to be remanded to the district court for enforcement, we have concluded to remand the same, with directions to the district court of Weber County to modify its conclusions of law and decree to the effect that lot 10, with the improvements thereon, be sold; that the proceeds derived therefrom be first applied to the satisfaction of the company's and Jacob's mechanics' liens, together with accrued interest and attorneys' fees allowed by the court, and costs; and that the surplus, if any, be then applied to the satisfaction of appellant's mortgages; and, subject to such modification, the findings of fact, conclusions of law, and decree are in all respects affirmed.

We remark that, in view that appellant has devoted nearly all of his abstract and brief to the proposition that the court erred in not declaring the two mortgages superior to the mechanics' liens, we deem it unfair to the mechanics' lien claimants to allow the appellant costs on this appeal. We also desire to add that, in referring to lot 10, we did so with the understanding that that lot is also described in the pleadings, findings of fact, and decree by metes and bounds. We deemed it unnecessary, however, to do more than to refer to said lot by its number, and in doing so, of course, have reference to the lot that is described by metes and bounds in the pleadings aforesaid.

The case is therefore remanded to the district court of Weber County, with directions to modify the conclusions of law and decree as hereinbefore stated, and when so modified to enforce the decree in accordance with law. Neither party to recover costs on this appeal.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.