491 P.2d 1261

METROPOLITAN LIFE INSURANCE
COMPANY, a corporation,
Plaintiff-Appellant,

v.

FIRST SECURITY BANK OF IDAHO, a
National Association, Jack L. King, Jay
Bell, Defendants-Respondents.

The TITLE INSURANCE COMPANY, a
corporation, Plaintiff and Inter-
venor, Appellant,

v.

Jack L. KING, Jay Bell, Defendants in
Intervention, Respondents.

No. 10742.

Supreme Court of Idaho.

Oct. 20, 1971.

Rehearing Denied Jan. 12, 1972.

**490**

Eberle, Berlin, Kading, Turnbow & Gillespie, chartered, Boise, for appellants.

Brown, Peacock, Keane & Boyd, Kellogg, for appellees.

SHEPARD, Justice.

This is an appeal from a summary judgment entered by the trial court establishing the relative priorities of liens in a mortgage foreclosure action. The trial court held that certain mechanic's and materialmen's liens were senior to the lien of a mortgage. That mortgage, although executed later than the effective date of the labor liens, was nevertheless claimed to be senior thereto by reason of being subrogated to the lien of an earlier mortgage.

Frank and Ellie Nay were the owners of land in Osburn, Idaho, upon which they desired to construct a "4-plex." They sought financing and obtained a commitment therefor from Commerce Mortgage Company of Spokane, Washington, which was conditioned upon the completion of construction and also upon satisfactory title. The Nays then obtained a loan for the purpose of financing the construction from the First Security Bank of Kellogg and as security therefor gave a note and a deed of trust. Those instruments were recorded on October 10, 1967. In an agreement executed contemporaneously with the note and deed of trust the Bank retained the option to disburse the moneys loaned to any contractors, materialmen or laborers for work done on the "4-plex." The Nays therein agreed that they would not use the loan moneys for any purpose other than paying all contractors, materialmen and laborers until all such charges were paid in full.

Construction on the 4-plex began and respondents King and Bell furnished labor and materials in connection therewith. On March 1 of 1968, the construction apparently was completed and the Nays executed a note and deed of trust to Commerce Mortgage which was recorded on March 14, 1968. The following day, March 15, appellant Title Insurance Company, through Shoshone Title Company, issued a preliminary title report showing the existence of the prior trust deed to First Security Bank and the liens of respondents King and Bell. On March 20 Commerce Mortgage paid off the note and trust deed held by the First Security Bank. Commerce Mortgage assigned all of its rights to appellant herein, metropolitan Life Insurance Company.

Title Insurance Company was acting as an escrow agent in connection with the loan and deed of trust and had knowledge of the fact that King and Bell had not been paid for their labor and materials furnished in the construction of the 4-plex. Title Insurance Company prepared an instrument entitled "Mechanic's Lien Indemnity" which purported to indemnify the Title Insurance Company and hold it harmless "In connection with any mechanics'

liens or bills." It will be noted [1] that the so-called "indemnity" was issued "in consideration" of the issuance of a title policy. Nay was dispatched by the Title Insurance Company to secure the signatures of King and Bell to said instruments. Those signatures he secured by issuing them his personal checks for which he had insufficient funds on deposit. When presented, the checks were refused payment by the Bank. Thereafter King and Bell filed their lien claims. Title Insurance Company issued a title insurance policy insuring Metropolitan Life Insurance Company.

At a later time the Nays defaulted on their agreement with Commerce Mortgage and Metropolitan Life as the assignee of Commerce Mortgage sought to foreclose upon its deed of trust. King and Bell sought foreclosure of their liens. Title Insurance Company, as intervenor, asserted that King and Bell had indemnified them against the loss they might sustain if the Title Insurance Company was required to pay Metropolitan Life Insurance Company under the provisions of the Title Insurance policy.

King, Bell and Metropolitan moved for summary judgment and the lower court granted summary judgment to King and Bell ruling that their liens were prior to all others. The lower court found that the indemnification agreements were induced by fraud and thus void and that Nay was acting as agent of the Title Insurance Company and that Nay's fraud was therefore imputed to the Title Company. From that summary judgment Metropolitan and the Title Insurance Company have appealed. The Nays have defaulted in this case and therefore are not parties to this appeal.

■■■ We turn first to the contention of appellants that the trial court erred in holding that Nay was acting as an agent

for the Title Company in procuring the signatures of King and Bell to the "indemnification" agreements. There is, and can be, no question but that Nay perpetrated fraud upon King and Bell and that their signatures were induced by fraud. It is elemental that since the documents were secured by the fraud and without consideration that they were void. The instruments were prepared by Title Insurance and Nay was dispatched by it to secure the signatures which would enable Title Insurance to issue an insurance policy for which it could charge a premium. The instruments themselves indicate that they were for the benefit of the Title Insurance Company, and indeed the Title Insurance Company asserted in the lower court that it was entitled to rely upon those instruments to defeat the claim of King and Bell, and sought damages from them on the basis that they had violated the terms of those agreements. Title Insurance cannot now complain of the trial court's ruling of agency and imputed fraud since the record more than amply supports the conclusion of the trial court.

Appellants also complain that the trial court erred in entering summary judgment since there were disputed issues of material fact. We find no such issues. The facts both as to the issue of fraud and as to subrogation are not in dispute; only the legal conclusions to be drawn therefrom appear to be in contention between the parties.

The principal thrust of appellants' argument is the assertion that, since Commerce Mortgage paid the indebtedness of Nay to the First Security Bank, Commerce Mortgage, and its assignee, Metropolitan, should be subrogated to the lien status of First Security and its deed of trust.

---

1. "MECHANIC'S LIEN INDEMNITY"
"Gentlemen:
"In consideration of the issuance of an A T A Form Mortgagees Policy on; see attached copy of description
"In connection with the above loan I undertake and agree to save you harmless in connection with any mechanic's liens or bills for improvement on said property incurred in connection with the Commerce Mortgage Company loan (Instrument No. 216202) now pending.
　　　　　　"Very truly yours,
　　　　　　　　J. D. Bell"

We initially note that there is no question in Idaho but that the effective date of labor and materialmen's liens is the date of the commencement of the work or improvement or the commencing to furnish material. I.C. § 45–506; White v. Constitution Mining and Milling Co., 56 Idaho 403, 55 P.2d 152 (1936). Hence the liens of Bell and King relate back to a time prior to the date of the deed of trust of Commerce Mortgage.

Both parties agree that the facts and circumstances of each case determine whether the doctrine of subrogation should be applied. Williams v. Johnston, 92 Idaho 292, 442 P.2d 178 (1968); Gerkin v. Davidson Grocery Co., 57 Idaho 670, 69 P.2d 122 (1937).

Appellants point out that there exist two types or kinds of subrogation: legal and conventional. Legal subrogation cannot exist where one person in no way related to the property nor in any way required to protect an interest, advances money to pay off a lien. Martin v. Hickenlooper, 90 Utah 150, 59 P.2d 1139 (1936). In the case at bar, Commerce Mortgage had no interest to protect and was not required to advance its money. It was in the business of loaning money and doubtless hoped to make a profit through its loan in the instant transaction. It had issued a letter of commitment to make the loan but such commitment was conditioned upon clear title. Commerce Mortgage employed Title Insurance to certify and insure such a clear title. Title Insurance determined that the interests of King and Bell were outstanding and would not insure the title absent removal of the interests of King and Bell. To that end their agent Nay was dispatched to obtain clearance of title through the medium of the indemnity agreement, and secured its execution by fraud. As aforesaid, that fraud was imputed to the Title Insurance. Title Insurance and its principal, Commerce Mortgage, cannot now be heard to claim that they were not aware of the interests of King and Bell nor that they were required

to advance the moneys on Nay's behalf regardless of the status of the title.

Appellants' case must then rest upon the existence of conventional subrogation. Conventional subrogation exists where one person pays another's debt not because of a surety situation or because the payor has an interest to protect, but because of an express or clearly implied agreement that the payor will be subrogated to the position of the first creditor. Emmert v. Thompson, 49 Minn. 386, 52 N.W. 31 (1892); Martin v. Hickenlooper, supra. Appellants cite a number of cases purportedly sustaining the position of the appellants herein. Martin v. Hickenlooper, supra; Emmert v. Thompson, supra; Peterman-Donnelly Engineers & Contractors Corp. v. First National Bank of Arizona, 2 Ariz.App. 321, 408 P.2d 841 (1965). We note, however, that in each of said cases, the person seeking the application of the doctrine of subrogation established either clear evidence of an agreement, express or implied, that the payor should be subrogated to the position of the earlier creditor or clear evidence that the payor was ignorant of the intervening lien claimants.

We agree with the holding of the court in Citizens State Bank of Tulsa v. Pittsburg County Broadcasting Co., 271 P.2d 725 (Okl.1954) that the burden of proof is on the payor to establish that there was an express or implied agreement that the payor should be subrogated to lien of the earlier creditor. We find that no evidence of such an express or implied agreement has been established by appellants. The Nays, as aforesaid, have defaulted in this matter and no testimony was presented establishing or implying agreement between them and Commerce Mortgage or Metropolitan. The only evidence of communication between First Security and Commerce Mortgage or Metropolitan were two letters, neither of which established or implied any agreement or subrogation.

Appellants suggest that the mere payment of another's debt implies that the payor should be subrogated to the earlier

creditor's lien status. The very actions of appellants militate against such argument. If Commerce Mortgage and Metropolitan believed they were subrogated to the earlier lien of First Security, then they performed a useless and financially wasteful act in employing Title Insurance to research the state of the title after the time of the lien of First Security's deed of trust. Investigation revealed the interests of King and Bell, and the appellants sought to eliminate those interests prior to loaning the money. We cannot agree that the necessary implication of a subrogation agreement flows from two such inconsistent courses of action by sophisticated lending institutions.

■ It is clear that in Idaho lien statutes governing mechanic's and laborer's liens are to be liberally construed so as to effect their objects and to promote justice. Seafoam Mines Corp. v. Vaughn, 56 Idaho 342, 53 P.2d 1166 (1936).

■ The decisions of the Idaho court dictate that subrogation is a creature of equity and will not be permitted to work an injustice to the rights of those having equal or superior equities. Porter v. Title Guaranty and Surety Company, 17 Idaho 364, 106 P. 299 (1909). As was stated in Houghtelin v. Diehl, 47 Idaho 636, 277 P. 699 (1929):

> "It [subrogation] is considered a creature of equity, and is so administered as to secure real and essential justice without regard to form, and it will not be allowed where it would work an injustice to others, as where it would disturb the priorities of liens or defeat any rights of others."

The equities in this case preponderate in favor of the lien claimants Bell and King. They furnished labor and materials to construct the building which appellants now claim as security for moneys loaned by appellants. Money was initially loaned upon the agreement that all persons engaging in the construction would be first paid from the loan proceeds. King and Bell were not so paid. Appellants discovered the breach of the agreement on the part of Nay when they found King and Bell had not been paid. They continued to put their faith in Nay by using him as an agent. Nay again abused their misplaced confidence by utilizing fraud to procure the signatures of King and Bell. Appellants should not be rewarded in equity for their negligence in failing to take a specific assignment of the rights of First Security and thus establishing beyond doubt their subrogated status. Neither should respondents be penalized in equity for the position in which they find themselves when it results from the admitted fraud of Nay.

The judgment of the trial court is affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON and SPEAR, JJ., concur.