**J. Lamar RICHARDS, Plaintiff and Appellee,**

v.

**SECURITY PACIFIC NATIONAL BANK; Debra L. Youngman; Deborah Diamanti; Ameristar Financial Corporation; Associates Financial Services Company, Inc.; First Boston Mortgage Securities Corp., Defendants and Appellants.**

No. 920679–CA.

Court of Appeals of Utah.

March 9, 1993.

Sherman C. Young (argued), Jerry L. Reynolds, Ivie and Young, Provo, for defendants and appellants.

Ralph R. Tate, Jr. (argued), Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

BILLINGS, Presiding Judge:

Security Pacific National Bank appeals from the trial court's grant of summary judgment concluding the mechanics' lien of J. Lamar Richards had priority over Security Pacific's mortgage on the property in question. We affirm.

## FACTS

On May 15, 1985, Debra Youngman purchased, under a uniform real estate contract (U.R.E.), residential property located in Salt Lake City. The property was subject to five encumbrances: Three simple deeds of trust totaling $139,130, an "all-inclusive" deed of trust for $284,239.80 in favor of Gail Zscheile, and a second all-inclusive deed of trust for $395,000 in favor of Lafayette Properties. The three simple trust deeds and the Zscheile trust deed were all recorded in 1985. The U.R.E. and the Lafayette trust deed were not recorded until June 29, 1988.

Sometime prior to June 29, 1988, but in that month, J. Lamar Richards, a painting contractor, commenced work on the property at Youngman's request. By August 26, 1988, Richards had completed his work, supplying materials and services valued at $9499.50. Youngman paid $4000 towards retiring that debt. On November 16, 1988, Richards filed a mechanics' lien in the amount of $5985.

On July 7, 1988, Ameristar Financial Corp. and Youngman closed a loan for the purpose of refinancing Youngman's obligations on the property. Ameristar loaned Youngman $320,000. Of that amount, $98,029.95 went to the three individuals holding the simple trust deeds, $151,970.05 went to Zscheile, and $53,546 went to Lafayette Properties. Thus, $303,546 of the loan paid off existing encumbrances on the

property. The balance of the loan, $16,454, covered the costs of the loan. Ameristar received a trust deed in the amount of $320,000, which was recorded on July 7, 1988, as security for the loan. On October 15, 1988, Ameristar assigned its trust deed to First Boston Mortgage Securities Company. On the same day First Boston assigned the trust deed to Security Pacific. The record does not indicate if Ameristar ever asked Ms. Youngman whether any remodeling or construction work had been, or was being, undertaken. Ms. Youngman did, however, sign a "Fannie Mae" affidavit containing, among many other things, preprinted language that she had not "given, conveyed, permitted, or contracted for, or agreed to give, convey, or permit any lien upon the Property to secure a debt or loan." In addition, two forms prepared by Ameristar's underwriter, neither of which have Ms. Youngman's signature, have checks next to a box labeled first mortgage.

Richards filed an action against Youngman and others, ultimately including Security Pacific, asserting that his mechanics' lien was superior to the Ameristar trust deed. Richards filed for summary judgment. Richards argued that because a mechanics' lien relates back to the commencement of work and he commenced work at least by June 29, 1988, his lien was superior to the Ameristar loan recorded July 7, 1988. Security Pacific filed a cross-motion for summary judgment. Security Pacific argued that under the doctrine of equitable subrogation its mortgage had priority over Richards's mechanics' lien.

On August 20, 1991, the trial court granted Richards's motion for summary judgment against Security Pacific. In doing so, the court ruled: "Based on the undisputed facts of record and equities between the parties, the court concludes that the doctrine of equitable subrogation as claimed by defendant Security Pacific is not applicable in this case" and Security Pacific's interests were "inferior and subordinate to plaintiff's mechanics' lien."

On appeal, Security Pacific argues the trial court erred in granting Richards's mo-

tion for summary judgment. It asks us to reverse the trial court's summary judgment and hold the doctrine of equitable subrogation requires judgment in its favor.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hill v. Seattle First Nat'l Bank,* 827 P.2d 241 (Utah 1992); *Jones v. Bountiful City Corp.,* 834 P.2d 556, 558 (Utah App.1992). We examine a trial court's grant of summary judgment for correctness, according "no deference to the trial court's legal conclusions." *Jones,* 834 P.2d at 558. This is true whether the issue presented on summary judgment is one of law or equity. *See Town of Alta v. Ben Hame Corp.,* 836 P.2d 797 (Utah App.1992) (applying summary judgment standard on review of an injunction); *Vergote v. K Mart Corp.,* 158 Mich.App. 96, 404 N.W.2d 711 (1987) (applying summary judgment standard on claim for specific performance). When reviewing a grant of summary judgment, we review the record, including all inferences arising therefrom, in the light most favorable to the party opposed to the motion. *Hill,* 827 P.2d at 242.

## I. EQUITABLE SUBROGATION

The doctrine of equitable subrogation has not often been applied in Utah. The only detailed analysis of the doctrine is in a case from early in this century, *Martin v. Hickenlooper,* 90 Utah 150, 59 P.2d 1139 (1936). Thus, we examine the doctrine in some detail before determining the trial court correctly refused to apply equitable subrogation in this case.

### A. General Doctrine

The doctrine of equitable subrogation is widely recognized in American jurisprudence and has long been part of Utah law. *See Hickenlooper,* 59 P.2d at 1140–51. An individual's access to equitable subrogation as a "remedy depends upon the principles of justice, equity, and benevolence to be applied to the facts of the

particular case." *Hickenlooper*, 59 P.2d at 1140; *see also* Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 10.1, at 707 (2d ed. 1985) (Nelson & Whitman). Equitable subrogation allows a creditor, who satisfies a prior creditor's lien, to acquire the lien priority of the prior creditor under certain circumstances. *Hickenlooper*, 59 P.2d at 1141; Nelson & Whitman, § 10.1, at 706. Because of its equitable nature, application of the doctrine "may be defeated by intervening rights which would be prejudiced." *Peterman–Donnelly Engineers & Contractors Corp. v. First Nat'l Bank*, 2 Ariz.App. 321, 408 P.2d 841, 846 (1965); *see also Metropolitan Life Ins. Co. v. First Security Bank*, 94 Idaho 489, 491 P.2d 1261, 1265 (1971). The equitable nature of the doctrine prevents articulation of an unwavering rule that applies in all cases. *Hickenlooper*, 59 P.2d at 1141; *see also Peterman–Donnelly*, 408 P.2d at 845.

▮ Nevertheless, courts have focused on two critical questions in determining whether to apply the doctrine of equitable subrogation to grant a subsequent lender priority over an intervening lienor. First, whether there was an agreement, either express or clearly implied, that the subsequent lender would succeed to the priority position of the earlier lender. *Hickenlooper*, 59 P.2d at 1152. The extent to which an agreement between the lender and the debtor must be evidenced before subrogation is applied depends on the "attitude of the particular court toward subrogation."[1] Nelson & Whitman, § 10.5, at 714 (footnote omitted). Second, whether the subsequent lender had knowledge of the intervening lien. Nelson & Whitman, § 10.6, at 716. *See also Collateral Investment Co. v. Pil-*

*grim*, 421 So.2d 1274 (Ala.Civ.App.1982) (holding constructive notice defeats claim under doctrine); *Canton Morris Plan Bank v. Most*, 44 Ohio App. 180, 184 N.E. 765 (1932) (holding actual notice defeats claim under doctrine). Because the knowledge issue is dispositive, we need not decide whether the facts of this case satisfy the agreement prong of the doctrine.[2]

## B. Knowledge

### 1. Utah Cases

Older Utah cases provide some guidance on the issue of knowledge. In *Badger Coal & Lumber Co. v. Olsen*, 50 Utah 307, 167 P. 680 (1917), a mechanics' lienholder was granted priority over a later lender because the subsequent loans were not made " 'in ignorance of an intervening lien.' " *Id.* at 682 (quoting 2 Jones on Mortgages, § 971). Thus, the supreme court recognized that a later lender with actual knowledge of an intervening lien could not take advantage of equitable subrogation.

Another early case refused to grant complete subrogation because of the earlier lender's constructive knowledge of an intervening lien. In *George v. Butler*, 16 Utah 111, 50 P. 1032 (1897), Butler borrowed $2500 from an investment company. He then borrowed $1000 from George. He next borrowed another $1000 from the investment company. Finally, Butler borrowed $3500 from Sutherland to pay off the investment company. Each loan was secured by the property. The mortgage Butler gave George was recorded but misidentified the actual lot. Neither Sutherland nor the investment company had any actual knowledge of the loan from George.

---

1. For example, Texas courts infer an agreement to subrogate from the fact of a loan. *See Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc.*, 576 S.W.2d 794 (Tex. 1978). In contrast, Wisconsin requires a definite agreement plus a balancing of the equities that shows subrogation should be applied as a matter of doing justice. *See Rock River Lumber Corp. v. Universal Mortgage Corp.*, 82 Wis.2d 235, 262 N.W.2d 114, 117 (1978).

2. *See Metropolitan Life Ins. Co. v. First Security Bank*, 94 Idaho 489, 491 P.2d 1261, 1265 (1971) (reasoning the later lender "should not be re-

warded in equity for their negligence in failing to take a specific assignment of the rights" of the earlier creditor); *Southwest Title & Trust Co. v. Norman Lumber Co.*, 441 P.2d 430, 434 (Okla.1968) (upholding trial court's rejection of trust company's equitable subrogation claim in favor of mechanics' lienholder because no clear agreement to subrogate); *Rock River Lumber Corp. v. Universal Mortgage Corp.*, 82 Wis.2d 235, 262 N.W.2d 114 (1978) (requiring "definite agreement" and assessment of equities prior to applying subrogation).

**610**

Sutherland thought he was secured to the same extent as the investment company. The investment company thought the entire loan was secured by a first lien. George brought suit to foreclose her mortgage. The trial court subrogated Sutherland to the rights of the investment company and granted him priority as to the first $2500. 50 P. at 1033. The supreme court affirmed. *Id.* at 1034. Sutherland was not subrogated to the full extent of the $3500 which he loaned. The court apparently held that the investment company was constructively aware of George's intervening loan even though the recordation was imperfect. Thus, constructive knowledge was sufficient to defeat part of Sutherland's claim for subrogation even where the recordation was imperfect and he believed he was getting a first priority lien.

■ In *Hickenlooper*, Mr. Stoven executed a mortgage on some property in favor of the State of Utah. Stoven then sold the property, subject to the mortgage, to the Hickenloopers. The Hickenloopers then executed a second mortgage in favor of Martin. They then conveyed the property, subject to both mortgages, to Fritsch Loan & Trust. Fritsch then executed a mortgage in favor of Mrs. Zorn and used the money to pay off the mortgage held by the State. Joining all parties, Martin brought an action to foreclose. Mrs. Zorn asserted that, because her loan was used to pay off the State, was intended for that purpose, and Fritsch had agreed and represented to Mrs. Zorn that her lien would be a first lien, she had priority over Martin. Mrs. Zorn had no knowledge of Martin's lien. The opinion does not indicate if the lien had been recorded. However, Mrs. Zorn relied on the representations of Fritsch's agent who told her she did not need a lawyer to assure her priority.

The trial court, after a trial on the merits, found in favor of Mrs. Zorn. *Hickenlooper*, 59 P.2d at 1140. The Utah Supreme Court held the only issue presented was whether the trial court erred in applying the principle of subrogation. *Id.* Based on the promise of Fritsch that Mrs. Zorn's lien would have priority, the court held there was ample evidence an agreement that Mrs. Zorn take the priority of the State's lien, "if not expressed [was] at least implied." *Id.* at 1152. In its discussion, the court examined the impact of constructive notice and recognized that, in appropriate circumstances, constructive notice could defeat application of equitable subrogation based on the equities of the situation. *Id.* at 1143.

The more recent Utah cases applying equitable subrogation principles involve unique factual circumstances not helpful to our analysis.[3] Aside from the passing reference in *Hickenlooper*, Utah courts have not considered whether equitable subrogation is applicable when a subsequent lender does not have actual notice of an intervening mechanics' lien. To resolve this question we look to Utah's mechanics' lien statutory scheme and then look at how other jurisdictions have dealt with the issue.

*2. Mechanics' Lien Statutes and Constructive Notice*

■ Utah's mechanics' lien statutes exist to protect those who enhance the value of property by supplying labor or materials. *Calder Bros. Co. v. Ross L. Anderson Signs, Inc.*, 652 P.2d 922, 924 (Utah 1982); *For–Shor Co. v. Early*, 828 P.2d 1080, 1081 (Utah App.1992). The statutes are construed "broadly to effectuate that purpose." *Interiors Contracting, Inc. v. Navalco*, 648 P.2d 1382, 1386 (Utah 1982). Mechanics' liens

> relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently ... [or] was unrecorded at the time the ... improvement was commenced, work begun, or first material furnished on the ground.

695 P.2d 102 (Utah 1984).

---

**3.** *See Tracy–Collins Trust Co. v. Goeltz,* 5 Utah 2d 350, 301 P.2d 1086 (1956); *Horton v. Horton,*

Utah Code Ann. § 38–1–5 (1988). "[T]he presence of building materials upon the land or other visible evidence of work performed provides notice to any interested party that work has commenced." *Calder Bros.*, 652 P.2d at 924 n. 1. Thus, the unique aspect of a mechanics' lien is that commencement of visible work is treated as imparting constructive notice of a lien.[4] *See First of Denver Mortgage Investors v. C.N. Zundel & Assoc's.*, 600 P.2d 521 (Utah 1979).

A number of courts have concluded constructive notice under mechanics' lien statutes defeats application of equitable subrogation. *See, e.g., Collateral Inv. Co. v. Pilgrim*, 421 So.2d 1274 (Ala.Civ.App.1982); *Carl H. Peterson Co. v. Zero Estates*, 261 N.W.2d 346 (Minn.1977); *Cheswick v. Weaver*, 280 S.W.2d 942 (Tex.Civ.App. 1955).[5] In *Collateral*, a construction company executed construction money mortgages for condominiums on the property in question. Pilgrim supplied lighting equipment and related fixtures for the projects. Homeowners purchased the finished condominiums. Collateral Investment loaned the homeowners money in return for a purchase money mortgage. It instructed the closing agents that it wanted to acquire an interest subject to no other lien. At closing, Collateral Investment paid off the construction money mortgages and the construction company executed an affidavit that no other liens existed. Pilgrim recorded notice of his mechanics' liens after the closing. The trial court held Pilgrim's liens had priority over Collateral Investment's mortgages.

On appeal, Collateral Investment argued it should be equitably subrogated to the construction mortgages. The appeals court affirmed on two grounds. First, Collateral Investment did not advance the money on behalf of the debtor. *Collateral,*

421 So.2d at 1276. Second, Collateral Investment had knowledge of the intervening lien. The court held that under Alabama's mechanics' lien statutes, when a mortgage company finances a new building it is under constructive notice that a mechanics' lien "is statutorily permissible for six months." *Id.* at 1277.

The Minnesota Supreme Court, in *Carl H. Peterson Co. v. Zero Estates*, 261 N.W.2d 346 (Minn.1977), reached a similar result with a slightly different rationale. That court rejected a bank's argument a second mortgage executed by the debtor, which paid off the bank's first loan, should be subrogated to that loan and thus gain priority over intervening mechanics' liens. In affirming the trial court's grant of priority to the mechanics' lienholders, the court relied on the commercial sophistication of the bank and its ability to identify and obtain subordination agreements from those lienholders. It also noted the mechanics' lienholders were "innocent parties whose rights could be substantially impaired" if the bank was given priority. *Id.* at 348. Without directly saying so, the court appears to have held the bank had constructive notice of the intervening liens, and thus could not claim to have a reasonable expectation of priority arising in equity.

We conclude the constructive notice provided by Utah's mechanics' lien statutes defeats a claim for equitable subrogation. The mechanics' lien statutes are an expression of legislative intent that should stay the hand of equity in this situation. If we held otherwise, we would violate the equitable maxim that equity follows the law. Thus, because Richards commenced visible work on the property at least seven days prior to the Ameristar refinancing, Security

4. Whether the work done by Richards was sufficient to meet the visible commencement standard is not an issue in this case. *See King Bros., Inc. v. Utah Dry Kiln Co.*, 13 Utah.2d 339, 374 P.2d 254 (1962) (remanding case for factual findings on visible commencement issue). Security Pacific did not raise the issue below. It conceded the work commenced prior to June 29 for purposes of the mechanics' lien statutes.

5. Another court implied it would hold constructive notice defeats equitable subrogation. *See Metropolitan Life Ins., Co. v. First Security Bank*, 94 Idaho 489, 491 P.2d 1261 (1971); *but see Smith v. State Savings & Loan Assoc.*, 223 Cal. Rptr. 298, 301, 175 Cal.App.3d 1091, 1099 (Cal. App.1985) (holding constructive knowledge insufficient to defeat application of subrogation).

Pacific had constructive knowledge of the mechanics' lien via our mechanics' lien statutes. *See* Utah Code Ann. § 38–1–5 (1988); *Calder Bros.*, 652 P.2d at 924 n. 1. Because equitable subrogation is not available to a later lender who has knowledge of an intervening lien, we conclude the trial court was correct in rejecting Security Pacific's attempt to use the doctrine.

Security Pacific argues that Richards receives a windfall simply because the property was refinanced. If we held against Richards, however, Security Pacific would receive the windfall. They would have the value of his work without having paid anything for it. Given the legislature's creation of a specific statutory preference for mechanics' lienholders, if the question is framed as a choice between which party should receive a windfall, we believe it should be the mechanics' lienholder.

In addition, the fact there have been few equitable subrogation cases before the courts in recent years underscores the argument that commercially sophisticated lenders should protect themselves in contract. Commercial lenders can easily examine the property, ask specific questions regarding the existence of intervening lienholders, acquire subordination agreements with any lienholders that exist, or, in many cases, assume the rights of the earlier lender by assignment. In contrast, asking mechanics and materialmen to stay apprised of the state of title for each property they perform work on adds a layer of legal complexity that many have no capacity to incorporate into their businesses. Given the statutory protection granted mechanics' lienholders, it is much more appropriate to have commercial lenders bear the burden of protecting themselves.[6]

## II. ATTORNEY FEES

 Counsel for Richards asks that we remand the case to the trial court for an award of costs and attorney fees in accord with Utah's mechanics' lien statutes. The Utah mechanics' lien statutory scheme provides for attorney fees to a party that must undertake court action to recover on the lien. The Utah Code provides: "In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action." Utah Code Ann. § 38–1–18 (1988). An appeal from a suit brought to enforce a lien qualifies as part of "an action" for the purposes of this section. *See Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 174 (Utah App.1990). Because Richards is the successful party he is entitled to attorney fees. We therefore remand for the entry of the appropriate fees in favor of Richards.

## CONCLUSION

We conclude that under Utah's mechanics' lien statutes a subsequent lender has constructive notice of intervening mechanics' liens. Thus, we affirm the trial court's ruling that Security Pacific is not entitled to utilize the doctrine of equitable subrogation to defeat Richards's mechanics' lien. We, therefore, remand this case to the trial court for entry of a judgment including reasonable attorney fees and costs for this appeal in favor of Richards.

ORME and BENCH, JJ., concur.

---

**6.** Furthermore, this case illustrates the wasteful nature of litigation over the doctrine of equitable subrogation. Plaintiff's five thousand dollar lien has most recently been the subject of a judgment, including costs and fees, of nearly ten thousand dollars. That does not include the costs or fees relating to this appeal, which plaintiff also recovers. The nature of situations in which equitable remedies are applicable are highly fact sensitive and will always require a significant amount of legal work to present. Thus, encouraging simple contractual solutions is sound public policy.