This case involves the priority of liens on real property.
Cameron, Inc. purchased two tracts of land for the construction of residential housing. The first tract of land was used for the construction of town homes. On October 31, 1979 Cameron executed a construction money mortgage to Central Bank of Alabama upon the entire tract in the amount of $514,000.00. On January 9, 1980 Cameron executed a construction money mortgage on the second tract of land to Central Bank in the amount of $29,000. Both of these mortgages were duly recorded.
Cameron entered into an oral contract with Harold Pilgrim, Jr., d/b/a The Light House (Pilgrim) whereby Pilgrim agreed to supply light fixtures, door chimes, and other items for the construction. Payment was to be made on the tenth of the month following purchase. The present dispute arises out of Cameron's failure to pay for the items supplied.
We are concerned with Cameron's failure to pay for the fixtures supplied to what is referred to as Lot 11 of the town homes and Lot 5 which is the second tract of land. Prior to completion of construction, Lot 11 was purchased by Anita Burleson and Lot 5 was purchased by Shirley Hatfield.
These individual purchasers were allowed to pick out the fixtures they wanted at Pilgrim's place of business. An electrician would then pick up the selected items and take them to the jobsite for installation. *Page 1275 
Collateral Investment Company agreed to loan both Burleson and Hatfield the money for their purchase of the property in return for a purchase money mortgage. Collateral instructed the closing attorneys in both transactions that it wanted to acquire an interest subject to no prior lien. As a result the attorneys examined a title abstract and probate court records and found no liens on the property. The abstracts did reflect the construction money mortgage to Central.
The closing attorney representing Collateral as to Lot 11 inquired of Central as to the amount necessary to satisfy the mortgage on Lot 11. Central responded in writing that $41,590.16 was due on this mortgage. It should be noted that Lot 11 was one of twelve town homes built on tract 1, and as we pointed out, the original loan from Central was $514,000.00 for the construction of all twelve of the town homes. Therefore Central apportioned the loan amount among the individual town homes.
On March 27, 1980 the loan between Collateral and Burleson was closed. Collateral advanced $55,600 to the closing attorney, which was the total loan amount. At closing Cameron signed an affidavit that all bills to materialmen, laborers, etc. had been paid. The closing attorney then delivered $41,590.16 to Central to satisfy the outstanding mortgage to Central. The loan was then closed, and Burleson executed a mortgage to Collateral.
The same series of events occurred in the closing of Lot 5. The closing attorney delivered $30,273.57 to Central in satisfaction of the mortgage. The total loan amount was $37,800.00. This loan was closed on May 2, 1980.
Pilgrim was never paid for the fixtures he supplied to these two lots. As a result Pilgrim filed a verified statement of lien in the Probate Court of Morgan County on August 27, 1980. On September 10, 1980 Pilgrim filed suit in the circuit court to enforce his liens on both lots. Cameron subsequently filed for bankruptcy.
After a hearing the trial court, sitting without a jury, determined that Pilgrim's materialman's lien took priority over Collateral's mortgage in both instances. From this judgment Collateral has appealed to this court.
The only issue presented in this appeal is whether the trial court properly found that Pilgrim's lien took priority over Collateral's lien on these two lots. We find no error and affirm the judgment.
Section 35-11-211, Code 1975, provides:
 Such lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement; and as to liens, mortgages or incumbrances created prior to the commencement of the work, the lien for such work shall have priority only against the building or improvement, the product of such work which is an entirety, separable from the land, building or improvement subject of the prior lien, mortgage or incumbrance, and which can be removed therefrom without impairing the value or security of any prior lien, mortgage or incumbrance; and the person entitled to such lien may have it enforced by a sale of such buildings or improvement under the provisions of this division and the purchaser may, within a reasonable time thereafter, remove the same.
In Empire Home Loans, Inc. v. W.C. Bradley Co., 286 Ala. 449,241 So.2d 317 (1970), it was held that liens of materialmen and mechanics created subsequent to a mortgage attach to the building only. It was further held that there is no right to remove and sell a new building when such a sale would impair the security of the existing mortgage which is prior to any materialman's lien thereafter arising.
It is clear that in the present case Central's construction money mortgage was executed prior to Pilgrim's supplying any materials to the jobsite. As a result it is undisputed that Central's mortgage would take first priority over Pilgrim's lien.
Collateral satisfied the Central mortgage. Collateral argues that by satisfying this *Page 1276 
mortgage it should now be allowed to claim first priority. This is known as the doctrine of equitable subrogation. Pilgrim, on the other hand, argues that Collateral's mortgage is subordinate to his materialman's lien because it was subsequent in time, and further that Collateral cannot be equitably subrogated to the rights of Central.
The elements of equitable subrogation are as follows: (1) the money is advanced at the instance of the debtor in order to extinguish a prior incumbrance; (2) the money is used for that purpose with the just expectation on the part of the lender for obtaining security of equal dignity with the prior incumbrance; (3) the whole debt must be paid before subrogation can be enforced; (4) the lender must be ignorant of the intervening lien; and (5) the intervening lienor must not be burdened or embarrassed. Federal Land Bank v. Henderson, Black, MerrillCo., 253 Ala. 54, 42 So.2d 829 (1949); Whitson v. MetropolitanLife Insurance Co., 225 Ala. 262, 142 So. 564 (1932).
We cannot find in the present case that the money was advanced at the instance of the debtor to satisfy the prior incumbrance. The debtor to Central was Cameron. Collateral's debtors were Burleson and Hatfield. Burleson and Hatfield were not debtors of Central. Therefore Burleson and Hatfield had no obligation to Central. Although it is clear that Collateral paid this debt to Central in order to satisfy the encumbrance, this was not done at the instance of Cameron. See generallyJefferson Standard Life Insurance Co. v. Brunson, 226 Ala. 16,145 So. 156 (1932).
In Bolman v. Lohman, 74 Ala. 507 (1883) it was stated:
 To entitle the complainants to be subrogated to the lien of the mortgage executed to Mrs. Frank by Bolman and wife, it manifestly required more than the mere appropriation of the borrowed money to the payment of the mortgage. The lender of money which is applied by the borrower in payment of a mortgage, or other lien on land, is not generally subrogated to the lien which is thus extinguished, merely upon the strength of the fact that his funds have discharged the incumbrance. . . . Subrogation is said to be the creature of equity, and not of contract, and is based on principles of justice and fair dealing. "It is nothing more than the putting by transfer one person in the place of another, and investing the former, in promotion of fair dealing, with the equitable rights of the latter." — Mc Williams v. Jenkins, 72 Ala. 480, 487. There is clearly no scope for the operation of the principle in a case of ordinary borrowing, where there is no fraud or misrepresentation, and the borrower creates in favor of the lender a new and valid security, although the funds are used in order to discharge a prior incumbrance. But the rule is settled that, where money is expressly advanced in order to extinguish a prior incumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security; or where its payment is secured by a mortgage, which for any reason is adjudged to be defective, the lender or mortgagee may be subrogated to the rights of the prior incumbrancer, whose claim he has satisfied, there being no intervening equity to prevent.
Collateral argues that it advanced money for the express purpose of satisfying this prior encumbrance. However, we cannot agree. Collateral loaned this money to the individuals based on these individuals' credit. The money was not loaned for the express purpose of satisfying this prior encumbrance. Collateral ordered the closing attorney to pay this prior encumbrance solely for its own benefit and not that of its debtors.
The cases indicate that equitable subrogation applies where the debtor borrows money for the express purpose of paying off the precedent debt. Collateral relies heavily on the case ofFirst Avenue Coal Lumber Co. v. King, 193 Ala. 438,69 So. 549 (1915). Although the facts of this case are closely analogous, the debtor, Bell, testified that he borrowed the money for the express purpose *Page 1277 
of paying off the first mortgage. In the present case there is no indication that the individual debtors borrowed the money to pay off the mortgage to Central. In fact the evidence indicates that the debt to Central was paid at the instance of Collateral. Further the major purpose of the loan transaction between Collateral and the individual debtors was for these debtors to purchase their property. Under the circumstances we find that Collateral has failed to meet the first element necessary to establish a first priority under the doctrine of equitable subrogation.
We further find that Collateral has failed to meet the fourth element of equitable subrogation. Under this element Collateral must show that it is ignorant of the intervening lien. We find the recent case of Starek v. TKW, Inc., 410 So.2d 35 (Ala. 1982) to be dispositive of this issue.
In that case a couple purchased a new home from the construction company for $50,000. A purchase money mortgage was given in the amount of $45,000. At the time of closing, the builder signed an affidavit stating that he had paid all materialmen. Later one of the materialmen filed a lien and brought suit against the purchasers to enforce the lien.
The major issue was whether a purchaser of a new building must have actual notice of a lien before the lien can be enforced against the purchaser. The court held that one who purchases a new building is put on constructive notice that a lien is statutorily permissible for six months.
In reaching this conclusion, the court relied on the following quote from Grimsley v. First Avenue Coal LumberCo., 217 Ala. 159, 115 So. 90 (1927):
 And the fact that the work was in progress is notice to all who dealt with said property or contracted therefor with its owner that the right under the statute exists, and sales or conveyances made within the time prescribed by the statute would be subject to the right. [Emphasis added.]
It is clear to this court that if a purchaser of a new home is considered to be on constructive notice that a lien can be filed, then certainly the mortgage company would also be on constructive notice. In view of the rule laid down in Starek,supra, Collateral could not have been ignorant of Pilgrim's lien. Hence, another element of equitable subrogation failed to materialize in support of Collateral's claim.
Having found that Collateral cannot be equitably subrogated to Central's mortgage, the trial court was correct in concluding that Pilgrim's lien took priority over Collateral's mortgage. As a result the judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.