6 So.3d 1 (2006)
Theresa LAWSON d/b/a The Design Company
v.
BRIAN HOMES, INC., et al.[*]
2040619-2040625.
Court of Civil Appeals of Alabama.
October 20, 2006.
*2 Gregory A. Reeves of Edwards, Mitchell & Reeves, Decatur, for appellant.
Guy V. Martin, Jr., of Martin, Rawson & Woosley, P.C., Birmingham, for appellees Wells Fargo Home Mortgage, Inc.; Chase Manhattan Mortgage Corporation; Countrywide Home Loans, Inc.; and Full Spectrum Lending, Inc.

On Application for Rehearing
PITTMAN, Judge.
The opinion of May 26, 2006, is withdrawn, and the following is substituted therefor.
These cases involve the priority of liens on specific parcels of property located in Madison County. We have consolidated these appeals.
Brian Homes, Inc. ("Brian Homes"), a homebuilding company, developed certain parcels of property in Madison County by building single-family residences on those parcels. On June 20, 2003, Brian Homes obtained a construction loan secured by a mortgage upon those parcels ("the senior mortgage") from New South Federal Savings Bank. Theresa Lawson, who does business as The Design Company ("Lawson"), performed subcontractor work for Brian Homes, installing carpet, tile, and marble flooring in numerous residences. In January 2004, the construction loan secured by the senior mortgage was paid in full with the proceeds of loans made on behalf of the ultimate occupiers of the constructed houses ("the purchasers") by Wells Fargo Home Mortgage, Inc.; Chase Manhattan Mortgage Corporation; Countrywide Home Loans, Inc.; and Full Spectrum Lending, Inc. ("the lenders").[1] At the time that the construction loan was paid in full, no materialman's liens had been recorded as to any of the parcels. In fact, it is undisputed that the lenders had no notice of a junior or secondary lien at the time they provided the funds to satisfy the loan secured by the senior mortgage. Lawson perfected materialman's liens as to the seven parcels at issue during the spring of 2004, and in August 2004 she filed multiple actions against the lenders and the purchasers to enforce those liens. The time line of each of the seven actions is marginally different from the others, but the priority issues are the same in all seven cases.
In each of the cases, the sequence of events is substantially the same: New South Federal Savings Bank held a first mortgage on each parcel on which a house was to be built by Brian Homes and its subcontractors. Lawson then provided material and labor to complete the flooring as to each house. Shortly after the completion of Lawson's work, Brian Homes sold each separate parcel of property to one of the purchasers, who acted in good faith and had no notice of the existence of Lawson's potential lien. After Brian Homes had failed to pay Lawson with *3 proceeds from those sales, Lawson attempted to perfect liens as to each parcel.[2] The filing and recording of those liens occurred after the recording of the senior mortgage and after the recording of the lenders' mortgages. In each action, Lawson asserted that her lien took priority over the lenders' mortgages pursuant to § 35-11-211, Ala.Code 1975, and she requested that the trial court order the sale of each of those parcels in order to pay Lawson the amount due on each lien.
The lenders filed summary-judgment motions in each of Lawson's actions to enforce the liens; in those motions, the lenders argued that either Lawson's liens did not have priority over the lenders' mortgages or that the lenders were due to be equitably subrogated as to the senior mortgage. Lawson, relying on this court's decision in Collateral Investment Co. v. Pilgrim, 421 So.2d 1274 (Ala.Civ.App. 1982), opposed the lenders' motions and filed her own summary-judgment motion in each action.
The trial court entered summary judgments in favor of the lenders and the purchasers in all of Lawson's lien-enforcement actions, noting that Lawson might otherwise have priority pursuant to § 35-11-211, Ala.Code 1975 (the materialman's lien priority statute), but that, in each case at issue, the lenders were equitably subrogated to the first-priority position of the senior mortgage.[3] Lawson appeals and asserts that the trial court erred in failing to correctly apply § 35-11-211, Ala.Code 1975, and the holding in Pilgrim.
The primary question on appeal is whether the trial court could properly enter a summary judgment against Lawson in each of her actions seeking to force a sale of the pertinent parcel of property in order to enforce her lien. In each case, Lawson and the current homeowners and the lenders agreed to accept the trial court's judgment without a hearing and based upon the pleadings and exhibits, and, in each case, the trial court determined that despite Lawson's statutory-priority argument, her position was secondary to that of the lenders, who were held to be entitled to equitable subrogation as to the senior mortgage.
The trial court in this case applied the law to the pleadings, which essentially contained undisputed facts. When an appellate court must determine if the trial court misapplied the law to undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. City of Prattville v. Post, 831 So.2d 622, 628 (Ala. Civ.App.2002); see also Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).
Lawson contends that the trial court failed to properly enforce Alabama statutes and caselaw pertaining to priority of liens. The Alabama statutes concerning mechanic's and materialman's liens are codified at §§ 35-11-210 through XX-XX-XXX, Ala.Code 1975. Those statutes, in one form or another, have been in force since the 19th century. The most recent legislative amendments to § 35-11-211, upon which Lawson relies, were adopted in 1990; at that time, that specific Code section *4 was completely rewritten. Generally, the pertinent statutes provide that a lien properly perfected according to the statutory provisions will take priority over any subsequent mortgage. Lawson's primary assertion is that equitable subrogation cannot apply to subordinate a lien properly perfected according to those statutes.
The doctrine of equitable subrogation provides that one who voluntarily loans money to a debtor to discharge a debt will "step into the shoes" of the former creditor. Subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation pays the obligation with the reasonable expectation of receiving a security interest in the property that has the same priority as the debt being discharged and if subrogation will not materially prejudice the holders of intervening interests in the property. See Restatement (Third) of Property § 7.6(b) and comment e (1997).
In order to be entitled to equitable subrogation, Alabama courts have historically held that one must meet the following requirements: (1) the money must be advanced in order to extinguish a prior encumbrance, (2) the money must be used for that purpose with the payor's expectation of obtaining a security interest of equal priority with the prior encumbrance, (3) the entire debt must be paid, (4) the payor must be ignorant of the intervening lien, and (5) the intervening lienor must not be "burdened or embarrassed." See Federal Land Bank of New Orleans v. Henderson, Black & Merrill Co., 253 Ala. 54, 59, 42 So.2d 829, 833 (1949).
In addition, our Supreme Court has stated that "`when a purchaser pays off a prior incumbrance as part of the purchase price without actual notice of a junior lien,... equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit.'" Shields v. Hightower, 214 Ala. 608, 610-11, 108 So. 525, 528 (1926). In order to qualify for relief under the doctrine of equitable subrogation, one "need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice ... is not sufficient to preclude [one] from invoking the doctrine of equitable subrogation in the absence of culpable negligence." Whitson v. Metropolitan Life Ins. Co., 225 Ala. 262, 266, 142 So. 564, 567 (1932); see also Brooks v. Resolution Trust Corp., 599 So.2d 1163, 1165 (Ala.1992).
In these cases, the lenders have established all the elements necessary to invoke the doctrine of equitable subrogation. Lawson concedes that her liens were subordinate to the senior mortgage held by New South Federal Savings Bank. The lenders satisfied the senior mortgage without actual notice of the materialman's liens claimed by Lawson and, therefore, should be treated as assignees of the senior mortgage. That result is not inequitable because Lawson is left in the same position that she occupied at the time she supplied the materials and labor, i.e., second behind the senior mortgage. Equitable subrogation will not change the priority of her liens because Lawson started out in a subordinate position.
Lawson insists that our opinion in Collateral Investment Co. v. Pilgrim, supra, is dispositive. In Pilgrim, this court concluded that a purchase-money mortgage lender would not be entitled to equitable subrogation to a construction-loan mortgage position having priority over a materialman's lien because, we held, the facts indicated that the purchase-money lender could not demonstrate the existence of all of the requirements of equitable subrogation. Specifically, this court held that the lender had not loaned its money to discharge *5 the senior mortgage and that the lender had had constructive notice of the materialman's lien by virtue of the enactment of § 35-11-215, Ala.Code 1975, which allows for the filing of lien statements within six months of the completion of work on a building. 421 So.2d at 1276-77. In these cases, the lenders loaned money directly to the purchasers who in turn paid Brian Homes who then satisfied the senior mortgage from New South Federal Savings Bank. Additionally, if we were to follow Pilgrim, application of § 35-11-215 would dictate that constructive notice to the lenders of Lawson's liens, rather than actual notice, would prevent them from invoking the doctrine of equitable subrogation.
In contrast, this court and our Supreme Court have revisited the law regarding materialman's liens several times since Pilgrim was decided in 1982. For example, in Builder's Supply Co. v. Compass Bank, 724 So.2d 525 (Ala.Civ.App.1998), this court determined that a lender's "permanent" mortgage completely discharging a construction loan was entitled to priority over materialman's liens that had attached to the property between the time the construction loan was recorded and the time the permanent mortgage was recorded. Builder's Supply, 724 So.2d at 527.
More analogous to the instant cases is Brooks v. Resolution Trust Corp., supra. In Brooks, our Supreme Court determined that a purchaser and a lender who completely satisfied a senior mortgage without actual knowledge of a secondary debt or lien were entitled to be equitably subrogated to the senior mortgage. Relying on Whitson, supra, our Supreme Court determined that once the party seeking subrogation makes a prima facie showing of lack of notice of an intervening lien, the burden shifts to the party opposing subrogation to prove that the other party's ignorance resulted from "`culpable neglect.'" Brooks, 599 So.2d at 1165.
The rationale in Brooks is equally applicable in these cases. It is undisputed that the purchasers and the lenders had no actual notice of the intervening liens; in fact, Lawson's liens were not filed until months after the closing and recording of the purchase-money mortgages. Lawson did not offer any evidence demonstrating culpability on the part of the purchasers or the lenders in this case. Instead, Lawson relies on § 35-11-215, Ala.Code 1975, as a substitute for actual notice. In these cases, Brian Homes clearly had actual notice of the interests of Lawson, but the record is clear that neither the purchasers nor the lenders had any notice whatsoever of Lawson's liens until after the purchase-money mortgages had been recorded.
Although we agree that §§ 35-11-210 through XX-XX-XXX, Ala.Code 1975, provide subcontractors the opportunity and the procedure by which to perfect liens against property to which improvements have been made, we conclude that those statutes do not guarantee that such liens will not be subject to equitable subrogation when the facts and equity require it. "`In enforcing the right of subrogation, the purpose always is to make the application of equitable principles to the particular facts and to effectuate the administration of natural justice between all parties concerned. That is the real doctrine of subrogation.'" Brooks, 599 So.2d at 1165-66 (quoting Federal Land Bank, 253 Ala. at 62, 42 So.2d at 836). Just like the intermediate vendor in Brooks, Lawson will not be "burdened or embarrassed" because her lien priority remains unaltered regardless of the subrogation. See also Mutual Life Ins. Co. of New York v. Grissett, 500 F.Supp. 159 (M.D.Ala.1980).
The construction industry today relies on banks and mortgage lenders to provide *6 both initial construction-loan moneys to underwrite the construction of new houses and other buildings as well as purchase-money loans to prospective individual buyers of those completed structures. In a completely honest and fair world, every developer, contractor, and subcontractor would be paid for his or her work from the proceeds of the sale of the property to the ultimate purchaser. However, if we were to accept Lawson's argument that the materialman's lien statute gives her liens priority over the lenders' purchase-money mortgages, all unpaid subcontractors who perfected materialman's liens as to these pertinent properties will receive an immediate windfall by forcing the sale of the residences, leaving the lenders (and the purchasers) without recourse. The doctrine of equitable subrogation therefore serves a remedial purpose in this context, and we conclude that the trial court's application of that doctrine in these cases is consistent with cases decided since Pilgrim that discuss the doctrine.
We thus conclude that the trial court in this case properly entered a judgment that the lenders (and the purchasers) are subrogated to the senior mortgage, leaving Lawson second in priority. We hereby overrule Pilgrim to the extent that it conflicts with this decision.
APPLICATION OVERRULED; OPINION OF MAY 26, 2006, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
CRAWLEY, P.J., and THOMPSON, J., concur.
MURDOCK and BRYAN, JJ., dissent, with writings.
MURDOCK, Judge, dissenting.
I believe the main opinion misinterprets the proper operation of Ala.Code 1975, § 35-11-211, and the doctrine of equitable subrogation. Section 35-11-211 begins by stating that a materialmen's "lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of the work on the building or improvement." Ala.Code 1975, § 35-11-211(a) (emphasis added).
As stated in Collateral Investment Co. v. Pilgrim, 421 So.2d 1274 (Ala.Civ.App. 1982),
"[t]he elements of equitable subrogation are as follows: (1) the money is advanced at the instance of the debtor in order to extinguish a prior incumbrance; (2) the money is used for that purpose with the just expectation on the part of the lender for obtaining security of equal dignity with the prior incumbrance; (3) the whole debt must be paid before subrogation can be enforced; (4) the lender must be ignorant of the intervening lien; and (5) the intervening lienor must not be burdened or embarrassed."
421 So.2d at 1276 (emphasis added) (cited with approval in AOD Fed. Credit Union v. State Farm Fire & Cas. Co., 931 So.2d 31, 40 (Ala.Civ.App.2005)); see also, e.g., Arnett v. Willoughby, 190 Ala. 530, 535, 67 So. 426, 428 (1914).
Several of the elements of equitable subrogation are not satisfied in the present cases. It is not necessary, however, to look beyond the first element in order to dispose of these cases.
The second loans, which the main opinion believes should be subrogated to the developer's construction loan, were not made to the original debtor. That is, they were not made to the developer. Rather, they were made to the ultimate purchasers of the houses. Also, the second loans were made to the ultimate purchasers not for the direct purpose of extinguishing any prior encumbrance, but rather for the purpose of enabling the purchasers to make *7 their purchases of the houses. Although the moneys from these second loans were loan proceeds in the hands of the purchasers, they merely constituted payments by the purchasers to the developer. Under the majority's analysis, the lien of a material's supplier properly recorded under our statutes would become all but meaningless whenever a house is purchased by a purchaser who utilizes loan proceeds to pay the builder or developer for the house and the builder or developer, in turn, upon being paid for the house by the purchaser, uses the proceeds of the sale to pay off its construction loan.
BRYAN, Judge, dissenting.
In her application for rehearing, Lawson argues that the cases upon which the main opinion relies in overruling Collateral Investment Co. v. Pilgrim, 421 So.2d 1274 (Ala.Civ.App.1982), are distinguishable, that this court should apply the holding in Pilgrim in the cases now before us instead of overruling Pilgrim, and that the holding in Pilgrim mandates the reversal of the trial court's judgments in the cases now before us. Because I find those arguments persuasive, I respectfully dissent.
NOTES
[*] Other than Brian Homes, Inc., each appeal involves different appellees. Rather than listing them separately, the opinion discusses only the relevant parties.
[1] Although Lawson named the purchasers of each parcel in her seven complaints, the purchasers are not parties to this appeal.
[2] The record contains detailed statements concerning the total amount that Brian Homes owed Lawson; although that total was over $425,000, the liens involved in these appeals range in value from $5,500 to $10,800.
[3] The trial court entered a Rule 54(b), Ala. R. Civ. P., order at the same time that it entered the summary judgments in these cases; each judgment also noted that "[t]his judgment does not establish the existence of a lien in favor of [Lawson], which issue is reserved for trial."